The next case is King v. Corporation Council of the City of New York. Good morning, Your Honor. May it please the Court, I'm Ian Weinstein, appearing on behalf of Mr. Clinton King. It was error for the District Court to dismiss this pro se action without even service upon the adversary, let alone a filing of an answer. The Medicaid statute creates a cause of action for the violation of the free choice or provider provision, and this claim should have gone forward in the District Court. I turn first to the free choice or provider provision under 42 U.S.C. 1396A, the Medicaid statute, and submit to the Court that while it is an open question in this Court whether that provision creates a cause of action, or I should say a property interest that is properly pursued in a six circuits that have considered this question agree that it does, the only contrary authority is dicta in the eighth circuit, and that a finding consistent with the six circuits that have addressed this question would certainly be consistent with this Court's decision in Kelly care, and I would urge the Court to find that there is a right, an enforceable right to the free choice or provider. I submit that the facts of this case show why that free choice or provider provision is so important. It is generally true that the relationship between patient and physician is so important, and Mr. King's particular situation, his dysarthria, his mobility challenges, while not essential to the claim, do illustrate why it is so important for a person once they have a primary care physician to be able to continue to see that primary care physician. Excuse me, you have one minute left of your first three minutes. Thank you. I will move on from the free choice of provider provision to note that the amicus argues waiver quite strongly, and we urge the Court not to rely upon waiver for two reasons. First, procedurally, the issue simply is not yet in the case under Rule 8 of the Federal Rules of Civil Procedure. Waiver is an affirmative defense that should be pled in an answer, all the more reason that this case should be remanded for further proceedings. We also submit that the statutes, complex as they are, provide for a limited waiver and do not provide for the kind of general waiver that the amicus suggests in its findings. Turning now to the sufficiency of the pleading in the 1983 action, that, of course, turns upon the three factors under Matthews v. Eldridge. This is a Matthews v. Eldridge situation because there was no pre-deprivation notice or procedure. Mr. King's property right, his right to choose and to continue to see Dr. Yusufudian, was violated here. And I emphasize to the Court that in considering the balancing test under Matthews v. Eldridge, on this record, slim as it is, it is entirely plausible to infer that there would be a very small burden upon MPHP and the city to give notice. In this case, Mr. Can I ask you, this is Judge Livingston, can I ask you to help me understand a little bit better where your client is deriving the property interest, and specifically with reference to the fact that there are documents that attach to the complaint that suggest that he's in a 23A. Thank you, Your Honor. Property interest. Thank you, Your Honor, yes. So if I understand Your Honor's question, this is a question about the scope of the waiver under 1396 A23. And first, as I argued, waiver is not procedurally in the case. But looking at the first, that the language of 23B begins with, I'm sorry, it doesn't begin with, but it says an enrollment of an individual in a primary care case management system. And it goes on to say, shall not restrict the choice of the qualified person from whom the individual may receive services, except as provided in, and then it cites 1396 N and 1396 U A. I'm sorry to interrupt you, but I mean, it focuses on 1396 D A4 C, right? The point I would make to Your Honor is that looking at the sections that then define the 1396 and the titled waivers to promote cost effectiveness and efficiency, that in there, we also find limiting language. So for instance, at the end of B1, it says, if such restriction does not substantially impair access to such services of adequate quality when medically necessary. My point here is that the waiver provisions of the Medicaid statute are not absolute, but are limited waivers to the extent necessary to promote certain goals. And on this very thin record, a determination cannot be made about the proper scope of the my primary contention, although I think that the language of 1396 N and then 1396 U 2 A, I would just point out, contains similar limiting language. And. Well, let me, I just want to make sure I'm understanding the statutory argument. 23 A has this exceptions clause. So the state plan has to provide that any individual eligible for qualified to perform the service who undertakes to provide it, except as provided in section 1396 U dash 2 A. And then that provision speaks of managed care plans. So your argument is when you look at that provision, we should read these two together to say that the exception clause limits, but doesn't nullify the choice of provider and managed care plans. So that even if we assume looking at the complaint, that's the allegation here is that your client was in such a plan that that his, he had a choice of provider within it. Am I understanding the argument correctly? Oh, you are your honor. I think that's exactly that's exactly right. I would only add that as I've noted, I would urge the court not to get to that question at this stage waiver, not having pled. And I would highlight how complicated the scheme is and the need to develop a factual record about how this particular plan fits in to the overall scheme of the Medicaid statute. I would also note that on this record, it is again, a plausible to infer. You have one more minute left. Thank you. It is plausible to infer first that maintaining choice of provider here would not burden the health plan or managed care plans. After all, Mr. King was restored to his choice of provider, although he suffered injury until that happened. And I would then in conclusion, note that what happened here was that there is a known problem with the computer system, such that when certain people's files are upgraded in the way that Mr. King's file was, MPHP knows that they will lose their primary care physician. It's not an intended result. As far as the record reveals, no one thinks this is a desirable result. This is something that could easily, or I shouldn't say that. I should say on this record, it's plausible to infer that there's a low cost way of fixing this. And so this is just the sort of error I submit that Matthews v. Eldridge contemplates and for which the proper remedy would have been some kind of post deprivation notice. I'm just going to start. Can I just ask one quick question? You said that on the statutory question, it's not proper right now because you need more fact finding. And I guess I'm wondering what record development is necessary. I mean, it seems like it has to do with the managed care plan. And then from there, it's just a question of putting together the provisions that apply, isn't it? Well, Your Honor, first I'm going to say on this record, all we know is the very general characterization that this is a managed care plan. Even the language of the statute suggests that that's less a term of art than a general category. The amicus brief relies upon some extra record evidence to say what a managed care plan is and how they function. But I submit that... So are you contesting that the U2 exception applies? I think it's reasonable that were the case remanded and the defendant served, the defendant could establish that this was a managed care plan that would fall under that section, Your Honor. But the details of the plan I submit matter, given that the statute says that the exception applies with certain limitations. And without knowing the details of the plan and a factual finding with respect to the scope of the limitations, I submit there's no way to know whether this particular limited claim for choice of provider on this record has been violated. Thank you, Your Honor. Thank you, Mr. Weinstein. We'll hear from the city. Thank you. May it please the court. My name is Jameson Davies for MetroPlus. The district court's order dismissing King's suit with prejudice for failure to say a claim should be affirmed. King has failed to make out a due process violation because he has no protected property interest in his preferred primary care provider under the statute. The statute doesn't grant him an unfettered right to choose a primary care provider, and it certainly doesn't grant him the type of property interest that's protected by the due process clause in that choice. He's been assuming he had a protected property interest in his choice. There was adequate post-deprivation process. He was permitted to seek emergency care without any prior approval, which he did. And his issue was resolved with a simple phone call as contemplated by the extensive regulations governing managed care plans both by the state and the federal government. The court need not reach the issue of whether the free choice of provider provision creates a private right of action because that determination is not necessary to resolve this case. At the outset, I think there's some confusion about waiver here. Waiver under Rule 8 is an affirmative defense that you plead where you indicate that the plaintiff has somehow waived his claim either through signing a waiver or some other kind of demonstration as a waiver. What we're talking about here is a statutory waiver. There is a waiver by statute that a state that chooses to implement a managed care plan is granted a waiver from otherwise applicable pieces of the Medicaid statute. And I don't think that is the kind of waiver that Rule 8 is contemplating. I think that is a waiver that can be determined just by looking at the statute, looking at the undisputed fact that MetroPlus is, in fact, a managed care plan. It's governed by the managed care plan regulations in 1396U-2 and not by the regulations in 1396A23A, which gives a specific exemption for these kinds of managed care plans. And also, the implementing regulations further support this. We point to 42 CFR 431.51, which indicates that states can restrict the freedom of choice required by Section 823. So, the statute clearly indicates, without having to go into any record development that... We have one more minute of your initial three. Thank you very much. Without having to further develop the record that there is this statutory waiver that it does apply to these kinds of managed care plans, and I think it's clear that MetroPlus is one of them. Even looking at the cases that talk about a private right of action under Section 23A, those cases have to do with where a state excludes entirely a certain provider from the provisions of Medicaid, not this kind of one-off case where it can be resolved administratively, where one person does not necessarily get the outcome that he preferred or that maybe should have happened under the rules. But it's not the same kind of claim that the other cases providing for private right of action under Section 23A have recognized. With that, I will answer any questions that the panel might have. Well, can I ask about the effect of 1396U2A? Because as I understand your adversary's argument, it is that notwithstanding that even if his client falls within that exception clause, we look to the managed care provision, that doesn't mean that he has no choice of provider interest at stake. It doesn't nullify that interest. It may just restrict it. And that at this stage of the proceeding, there's nothing in the complaint that negates an ongoing property interest for the due process claim. As to the due process claim, I think you would still have to identify where in the cross-reference in 1396U-2, he still has this interest in a specific primary care provider. If you read 1396U2, the regulations are pretty extensive about whether and how managed care organizations are permitted to assign primary care providers. They have provisions that say if someone doesn't choose one, they can assign one by default. It has to be a certain number of choices. So I think given the extensive statutory scheme and the fact that Mr. Theodat doesn't point to anything that suggests that under this plan, he has this kind of property interest that the due process clause recognizes. But as you said, the regulations make clear that if you don't choose, you can be assigned a provider by default. Doesn't that suggest that you still have, if assuming that you have a property interest here and that's a property interest, it's not negated if you fall within the exception? I would say the fact that there is a default provision and it provides that there must be some range of options doesn't necessarily create the kind of property interest that the due process clause recognizes because that would allow basically 1983 claims to circumvent these administrative remedies for any kind of issue with the implementation of the managed care organizations. Ordinarily, you would have to go through administrative remedies first. You can't use section 1983 due process clause to circumvent those. And here he availed himself of a remedy of inquiring and he was restored to his primary provider, his primary care provider. Correct. As soon as he got in touch with Metro Plus, he was restored to his primary care provider. And I would just note that Mr. Theodat doesn't address these unrequired, but there are many regulations, both state law and state regulations that govern how disputes about coverage should be resolved. They require disputes to be resolved in very short timeframes, especially when it's an emergency and gives him the chance, which he availed himself of a little bit later, to solve his issue and get his primary care provider back. I would also just point out one other thing, which is talking about the council mission section 23B, which I think as Judge Sullivan noted, only covers family planning services and supplies. And I think that's actually a good indication of Congress's intent. Congress wanted to allow people to have this free choice of provider ability. They knew how to re-implement that. And I think the fact that there is a specific carve-out for family planning services and supplies is strong evidence that section 23A does not have that kind of carve-out, that it is subject completely to 1396U-2 and there is no free choice of provider right if you're in a managed care system. Unless there are any other questions from the panel, we're happy to rest on our arguments in our briefs and we would urge the court to affirm. Thank you, Mr. Davies. Thank you. We'll hear rebuttal. Thank you, Your Honor. I have, I think, four points. First, with respect to the statutory scheme, we rely principally upon the limiting language in 1396N and 1396U-2A. I'd note that we do not argue for an unfettered choice of provider here. We submit that on this record, Mr. King, having had a relationship with his primary care physician, he had a property interest in continuing that relationship. I already noted the importance of the relationship and I note the very targeted and particular facts here and the narrow scope of a choice of provider that would be consistent with the managed care plans. Third, I'd note that while I take the sense of the argument with respect to Rule 8. You have one more minute. Thank you. I just note that there is no authority cited for the proposition. This is a waiver situation. I submit it shouldn't be pledged. With respect to the regulatory scheme, I'm going to note that while there is a scheme to restore the or to address the problem, Section 1983 aims at something quite different. Mr. King was indeed harmed by this deprivation of his rights and he should have a right and does have a right to pursue that action. Lastly, counsel said that he was restored as soon as he contacted MPHP. I'll just note that at this stage of the proceeding, taking all the facts as pled, I point the court to Appellant's Appendix 25 and note that Mr. King pled that he was denied care for a month and urge the court to remand this case for further proceedings. It should not have been dismissed. It's too responding without service and the filing of an answer. This is Jeff Sullivan. I have a quick question. I'm following up on the point made by Mr. Davies. I mean, this statute makes clear that a managed care organization can't restrict the choice where it comes to family planning services. If they made that express prohibition, what does that mean for your broader reading of this statute? That would seem to be unnecessary if your reading is correct, wouldn't it? Well, Your Honor, I take the point with respect to 139623, but then I urge the court to attend to the limiting language in 1396NB1 and 1396U2A. The language does not substantially impair access to such services of adequate quality or medically necessary. And again, similar language. So I note that the waiver provisions themselves contain limited language. And I'm urging at this time that we be given the opportunity to go back to the district court so the district court can make a contextualized finding as to how these complicated waiver provisions fit with the particular rules and regulations and with the MPHP policy. But I mean, why is the district court better suited to do that than us now? We're just interpreting a statute, right? Well, I'd suggest that, for instance, to make a determination about whether it would impair such services of adequate quality and were medically necessary. There simply isn't the record to make this determination. And the details of the MPH plan are not in this record. So what record needs to be developed then? Before we can decide whether that applies, what do we need record-wise? I will say first that, although I've tried to think about this, I feel I'm still speculating because the details of the MPH plan have not been made a part of this record. But were, for instance, Mr. King to rely upon the exception at the end if such restriction does not substantially impair access to such services of adequate quality were medically necessary, I take it that that would make relevant Mr. King's particular situation, his dysarthria, his significant mobility challenges. And perhaps the right result in this case would be that someone in his situation has a particular need not to be denied his choice of primary care physician arbitrarily. I cannot say that that is the argument we would make. But on the record, and having considered the statute, that seems to me at least one very real possibility. Thank you, Mr. Weinstein. And thank you. Thank you, Your Honor. And thank you for your service to the court. Thank you both. Nicely argued on both sides. That is the last argued case on the calendar. So I will ask the clerk to adjourn court. Court stands adjourned.